ROSA, PLAINTIFF AND APPELLEE, *v.* PAGÁN, DEFENDANT AND
APPELLANT.

APPEAL from the District Court of Arecibo in an Action
of Debt.

No. 2715—Decided March 5, 1923.

AGRICULTURAL LOANS — PURCHASE AND SALE OF SUGAR CANE — ACCOUNT CUR-
RENT—PAYMENT.—Interpreting the 7th clause of a contract of financing and
for the purchase and sale of sugar cane for a period of three years wherein
it was agreed that the financing creditor would pay the planter ''6½ for each
hundredweight of cane delivered and loaded at the scales, the said cane to
be liquidated at the price paid weekly by the Cambalache Central,'' it was
*Held:* That that clause only fixed the price that the plaintiff owed the de-
fendant for the cane delivered each week at the factory and that these
weekly liquidations in no way could be considered as a current account that
could be liquidated at any time at the will of the plaintiff for the purpose
of recovering the balance due. And it was further *Held:* That the fact that
the planter had mortgaged the property while the contract was in force
gives no right to the creditor to consider the contract terminated and to sue
for the balance due before the expiration of the term.

The facts are stated in the opinion.
*Mr. J. R. Aponte* for the appellant.
*Mr. L. Mercader* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the
court.

This is a personal action of debt arising from a contract
for financing the cultivation of sugar cane and the purchase
and sale of the crop.

The material allegation of the complaint is that "the
defendant carried a current account with the plaintiff who
advanced him money and other things for the cultivation
of sugar cane on a property owned by the said defendant
in the ward of Corcobadas, Hatillo, and that when the plain-
tiff balanced the said account on May 9, 1921, it showed the
sum of $767.29 in his favor."

In his answer the defendant denied that allegation and
averred in defense the existence of a private contract between
the plaintiff and the defendant containing, among others, the
following conditions:

"3.—Of this property the owner has planted, or agrees to plant, eighteen acres of sugar cane of good quality and formally binds himself to sell to Lucas Rosa the entire crop produced on the said property; and he further agrees to deliver his sugar cane after it has been harvested and properly prepared, fully ripe, sound, fresh and free from top, fodder, suckers and soil, to the Cambalache Central at the nearest scale of the said Central.

"4.—The cane shall be loaded for the account of    *   *   *   and hauled from the side-tracks of the Central for the account of *  *  * .

"7.—Lucas Rosa agrees to pay the planter 6½ percent for each hundredweight of cane delivered and loaded at the scale at the price paid weekly by the Cambalache Central.

"8.—The planter hereby agrees that while this contract is in force he will make no contract with any other person, corporation, etc., in relation to the said contract and the crop grown on the number of acres of sugar cane involved in this contract.

"9.—This contract is made for three years, or from this first day of May, 1920, to the first day of May, 1923.

"12.—Lucas Rosa agrees to advance money to the planter at the rate of from $25 to $30 for each acre of sugar cane in good condition in the opinion of Lucas Rosa.

"13.—The planter shall pay Lucas Rosa interest at the rate of 12 percent annually on the amount advanced on the sugar cane account.

"15.—This contract may be extended at the pleasure of the parties."

The defendant further alleged that on April 28, 1921, the plaintiff passed to him a statement of account showing a balance of $767.29 in favor of the plaintiff, but that the said contract was in full force because three years had not elapsed when the action was brought and no final liquidation thereof could be made.

The court below sustained the complaint and, among other conclusions in support of its judgment, said:

"The defendant offered in evidence at the trial the statement of April 28, 1921, passed to him by Lucas Rosa, the plaintiff, to which we have referred, showing a balance against him and in favor of the plaintiff of the sum of $726.73, thus acknowledging the plain-

tiff's claim and, as a logical and irrefutable consequence, his obliga-- tion to pay the said amount; and he has attempted only to raise the question that the contract was not terminated because the term of three years agreed upon had not expired.

"In the 7th clause of the said contract for the sale of sugar cane it is said: Lucas Rosa agrees to pay the planter (defendant) 6½ percent for each hundredweight of cane delivered and loaded at the scale at the price paid *weekly* by the Cambalache Central.'

"The account of the plaintiff, which was offered in evidence by the defendant and admitted, includes all weekly payments made by the plaintiff to the defendant in accordance with what had been stipulated and all deliveries of cane made by the defendant during the crop and grinding season beginning May 1, 1920, the date of the contract, and ending April 28, 1921, the date of the account passed by the plaintiff to the defendant, and shows a balance of $726.73 in favor of the former.

"In the said 7th clause of the contract a weekly liquidation was agreed upon, and different weekly liquidations from the year 1920 to May, 1921, appear in the statement of the account showing that Lucas Rosa had not been fully reimbursed for the money advanced during that time of the management and cultivation of the property and the harvesting of the crop, which includes the whole term or period of financing, in accordance with section 1 of Act No. 37 of 1910 relative to contracts of advances for agricultural purposes.

"The 7th clause of the contract determines the manner in which the defendant shall pay the balance due on his account, that is, by weekly credits for the cane sold, the defendant agreeing to it by means of the stipulated liquidation which, being under a financing contract, means payment.

"The defendant admits that he owes the balance of $726.73 appearing in favor of the plaintiff in the account offered by himself, and there being no agreement of time for the payment of the said debt of $726.73, and Pablo Pagán having refused to pay the same in violation of his agreement to pay the debt in a certain manner, he is subject to the obligation to pay Lucas Rosa the said sum of $726.73 which he owes him according to the current account.

"Accounts current are understood to be always liquidated, as their liquidation depends upon a mere arithmetical calculation. Judgment of the Supreme Court of Spain of December 2, 1887."

As appears from the evidence, this is a contract of financing and for the purchase and sale of sugar cane, and the question is of the interpretation to be given to its ninth clause wherein it is stipulated that its term is for three years from its date.

The complaint does not set up a written contract between the plaintiff and the defendant, and its principal object was to recover the balance of a current account considered to be due by the sole fact of its having been liquidated by the creditor. Likewise, the judgment of the trial court seems to be based on the theory of the complaint when the court concludes, in relation to the 7th clause of the contract, that an account current is understood to be always liquidated because its liquidation depends upon an arithmetical calculation, and thus the three years term of the contract was given no consideration.

By the financing contract the plaintiff bound himself to advance to the defendant certains sums of money for the planting and cultivation of eighteen acres of sugar cane, the amount of the advances being estimated at $25 to $30 per acre, or a maximum total of $540, and the money to draw interest at 12 percent annually. At the same time the crop was sold to the plaintiff and was to be delivered to a designated factory for the plaintiff's account. It was stipulated that the contract should be in force for three years and the purchase price of the sugar cane was fixed in the 7th clause which has been transcribed.

By this clause the price of the cane was fixed with certainty. In accordance with the usual understanding of this class of contracts, the meaning of the said clause is that the defendant should receive the value of 6½ pounds of sugar for each hundredweight of good and sound sugar cane, and inasmuch as the price of sugar varies from day to day or from week to week, according to the market fluctuations, the price that the defendant should receive for his cane had to

be liquidated in some manner and both parties agreed that it should be done weekly at the rate paid by a third party, who in this case was the factory where the cane was to be ground. Hence, the 7th clause only fixed the price that the plaintiff should pay to the defendant for the cane delivered weekly at the factory, and these weekly liquidations could be considered in no way as a current account that could be liquidated at any time at the will of the plaintiff for the purpose of recovering the balance due from the defendant.

The trial judge concluded, however, that this clause determined the manner in which the defendant should pay his debt, that is, by weekly credits for the cane delivered, the defendant being bound to this method by the financing account under the stipulated manner of liquidation, which under a contract of financing means payment. This is the fundamental error in the present case. The only purpose of the said clause is to fix the price to be paid for the cane delivered during each week, and this calculation repeated with each weekly delivery of cane was to be the basis for ascertaining the total amount that the plaintiff should pay to the defendant and also the basis upon which at the final liquidation the plaintiff would rely for deducting from the purchase price the sums advanced to the defendant under the financing contract, together with interest which was agreed upon in this case at the rate of 12 percent annually. Under these circumstances we have not before us a mere current account which may be considered as liquidated weekly and meaning that it must be so paid. These liquidations are the basis of the price of the sugar, with the average of which in due course there may be made a final liquidation of a contract which has a term expressly agreed upon by the plaintiff and the defendant.

In connection with the foregoing the evidence shows also that there could have been no error in the interpretation of the contract as regards its term. The statement of account

which the plaintiff passed to the defendant on April 28, 1921, makes it plain that during the first year of the contract the defendant fully complied with it by delivering all of his cane and preparing his crop for the following year, and also that the plaintiff performed his reciprocal obligation by advancing different sums of money to the defendant for the cultivation of his cane, which after being cut left ratoons which had to be taken care of and cultivated for the crop of the second year of the contract.

The contract was signed on May 1, 1920, to be in force during the grinding seasons of 1920-21, 1921-22 and 1922-23. The defendant agreed to plant and cultivate 18 acres of sugar cane every year and was to receive a maximum advance of $540 a year ($30 per acre). During the first year the defendant delivered to the plaintiff sugar cane to the value of $1,052.79 and from February to April of the same year of 1921 the plaintiff made different advances to the defendant for the second year, which appear in the current account of April 28, 1921, in the following manner:

| 1921. | | | | | $ |
|---|---|---|---|---|---|
| | Feb. | 26 | To cash for 1922 | | $12.00 |
| | Feb. | 26 | " " for 1922 | | 30.00 |
| | March | 5 | " his order crop of 1922 | | 15.00 |
| | March | 5 | " " " " " 1922 | | 35.00 |
| | March | 12 | " " " " " 1922 | | 15.00 |
| | March | 12 | " " " " " 1922 | | 25.00 |
| | March | 19 | Cash | | 25.00 |
| | April | 2 | To his order crop of 1922 | | 12.00 |
| | April | 2 | " " " " " 1922 | | 30.00 |
| | April | 9 | " " " " " 1922 | | 12.00 |
| | April | 9 | " " " " " 1922 | | 28.00 |
| | April | 16 | To cash | | 38.00 |
| | April | 23 | " " | | 20.00 |

These different items make a total amount of $297. This shows the clear and manifest intention of the parties in relation to the term of the contract in case there should be any doubt about the clause which expressly fixes the

term of three years. The last advance made to the defendant for 1922 was made on April 23, 1921, and on May 30, 1921, the plaintiff brought the present action, considering the contract terminated under the erroneous interpretation that it was a mere current account whose balance was recoverable upon its mere liquidation, thus leaving performance of the contract to the arbitrament of the plaintiff. See section 1223 of the Civil Code.

On the other hand, it is usual in sugar cane transactions between factories and planters to make contracts for financing the cultivation of and grinding the cane for more than one year. It is true that the cultivation of the cane is from one year to another, with the exception of the seedling crop which does not mature within twelve months; but whether first or second growth, the planter is at greater expense during the first year and always expects to be compensated by the increase in the successive crops, because according to the condition of the soil, the profits increase for the reason that the cultivation of the ratoons in the second and subsequent crops requires less expense. The very fact that cane is cultivated in general for yearly crops demands that in contracts of financing and grinding made for several years, in the absence of an express stipulation, a liquidation should be made at the end of each grinding season to show the condition of the business between the contracting parties. In this case the most natural thing for the plaintiff to do was to make such liquidations and ascertain whether it was prudent to continue advancing money to the defendant for the second year after the plaintiff had made advances in excess of the amount contemplated for the first year under the contract. It was also beneficial to the defendant in order to inform him of the value of the cane delivered and of whether the price was in accordance with the market quotations. The liquidation so made might be called provisional, as it did not terminate the contract; therefore, the balance due was not recover-

able, unless it had been so provided in the contract. If the plaintiff had made excess advances to the defendant and the account for the first year showed a greater total sum than he had agreed to advance, he could blame only himself, and he evidently did so by calculating the amount of cane produced by the defendant in excess of his advances, the total value of the cane delivered being almost double the amount advanced.

Notwithstanding all that has been said, it seems that the real motive of the present action, to which reference is made in the appellee's brief, is that after the defendant had made with the plaintiff the contract of financing and sale of cane on May 1, 1920, he mortgaged to a third person on June 22, 1920, the property containing the cane pledged to the plaintiff. The appellee contends that that act was a violation of the 8th clause of the contract of financing by which the defendant forfeited the term of the contract, if it was favorable to him.

The prohibition of the 8th clause clearly referred to the sugar cane and not to the property. Furthermore, the rights of the plaintiff were protected by the Act to provide for contracts of advances for agricultural purposes and grinding of cane of March 10, 1910, as amended by the Act of March 9, 1911.

Section 4 of the said Act establishes a preference in favor of the creditor to the crops of the property for which the money is advanced and during the term of the contract, from the date of its presentation in the registry. Section 7 provides that the contracts to which the Act refers shall be recorded in the registry of contracts for agricultural purposes on petition of any of the contracting parties, and section 8 prescribes that such records shall affect and be binding upon third parties, and that if after the record of any such contract the cane or the ownership of the land upon which the said cane is growing should be transferred, the transferee shall be bound to perform all of the obligations

of the contract as fully and in the same manner and to the same extent as the party to such contract who made the transfer or who held the interest transferred; but that no such transfer shall relieve any party from any obligation or liability upon the said contract.

There appears no violation by the defendant of the contract of May 1, 1920, and by virtue of all of the foregoing the judgment of the trial court must be reversed and substituted by another dismissing the complaint without special imposition of costs.

*Reversed.* ·

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf dissented.